IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00659-WYD

BYRON ROBINSON,

      Applicant,

v.

RICHARD SMELSER, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

―――――――――――――――――――――――――――――――――――――――――――――――

ORDER DENYING PETITION FOR HABEAS CORPUS

―――――――――――――――――――――――――――――――――――――――――――――――

The matter before the court is an Application For A Writ Of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and supplement to Application (Doc. No. 12).

I have determined that the Application can be resolved on the parties' briefing and that

no oral argument or evidentiary hearing is necessary.[1]

I.    <u>Background</u>

Applicant was charged in El Paso County District Court Case No. 01CR4389 on

the following counts:  first degree murder after deliberation, first degree felony murder,

attempted first degree murder, first degree burglary, four counts of violent crime-deadly

weapon, and three counts of child abuse.  On May 5, 2003, he was convicted by a jury

of the lesser offense of reckless manslaughter and acquitted of the remaining charges.

――――――――――――――

[1]*See* 28 U.S.C. § 2254(e); Fed. R. Governing Section 2254 Cases 8(a).

The following is a summary of the evidence at Applicant's trial, taken from the Colorado Court of Appeals' decision on direct appeal of his conviction:

>     According to the prosecution's evidence, defendant and DB, his son, went to the victim's apartment.  When the victim came outside at DB's request, defendant confronted him, an argument ensued, and defendant punched the victim.
>
>     The victim then ran back into his apartment and attempted to shut the door.  Defendant, who was armed, forced the door open and entered the apartment.  During a struggle for defendant's gun, the victim was fatally shot.  Three of the victim's children were in the apartment at the time.
>
>     Defendant's theory of defense was that the victim had threatened to get a gun, and that defendant's actions in getting his gun out and forcing his way into the apartment were in self-defense and defense of his son in order to prevent the victim from getting a gun and shooting them. Defendant contended the gun accidentally went off during the struggle with the victim.[2]

On July 8, 2003, the state trial court imposed an aggravated sentence of twelve years imprisonment with the Colorado Department of Corrections because Applicant had prior felony and misdemeanor convictions.[3]

Applicant filed a direct appeal of his conviction, followed by a motion for post conviction relief pursuant to Colo. Crim. P. Rule 35(c).  At the conclusion of the state post-conviction proceeding, he filed his § 2254 Application in this Court.

II.    Habeas Claims

Applicant filed *pro se* his Application for a Writ of Habeas Corpus on March 16, 2011.   He asserts thirteen claims in the Application (as supplemented on April 20,

---

[2]*People v. Robinson*, Case No. 04CA0283 (Colo. App. July 6, 2006) (unpublished); Doc. No. 7-6, at 1.

[3]State Court R. 7/8/03 Sentencing Hrg. Tr., at 44.

2011):

(1) The trial court violated his Sixth Amendment right to speedy trial;

(2) The trial court erred in its application of COLO. REV. STAT. (C.R.S.) § 18-6-401;

(3) The trial court's admission of a child witness's videotaped statements to the police at trial violated his Sixth Amendment confrontation rights;

(4) The trial court erred in admitting the victim's statement as an excited utterance;

(5) The police lacked probable cause to arrest him and the trial court erred in failing to suppress his statements to the police

(6) The trial court failed to provide the jury with tendered instructions;

(7) The trial court erred in imposing a discretionary sentence in the aggravated range;

(8) Trial and appellate counsel were ineffective in failing to preserve his constitutional right to a speedy trial;

(9) Trial counsel was ineffective in failing to investigate and present an alibi defense;

(10) Trial counsel was ineffective in failing to file a motion to suppress prejudicial evidence;

(11) Trial counsel was ineffective in failing to convey a possible plea offer;

(12) Trial counsel labored under a conflict of interest; and,

(13) Appellate counsel failed to raise issues on direct appeal, including the trial court's denial of a *Shreck* hearing and the denial of bail after trial.

Respondents have conceded that this action is timely filed pursuant to 28 U.S.C. § 2244(d).[4]  I have dismissed claims 2, 4, 6, part of claim 7 (trial court's failure to comply with a state statute), 8 and 13.  I address the remaining claims on the merits under

---

[4]Doc. No. 7, at 5.

AEDPA's deferential standard of review, as discussed below.

III.    Legal Standard

A.    Habeas Corpus Actions

Because Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that statute governs the court's review.[5]  Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).[6]

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.[7]  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."[8]  Furthermore, "[w]hen a federal claim has been

---

[5]*Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n. 1 (10th Cir.1999)).

[6]*See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

[7]*Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011).

[8]*Id.* at 784.

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[9]  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."[10] In other words, the federal habeas court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated."[11]

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).[12]  The threshold question the court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[13]  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[14]  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[15]

---

[9]*Id.* at 784–85.

[10]*Id.* at 784.

[11]*Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).

[12]*See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

[13]*See Williams v. Taylor*, 529 U.S. 362, 390 (2000).

[14]*Id.* at 412.

[15]*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the court's inquiry

pursuant to § 2254(d)(1).[16] If a clearly established rule of federal law is implicated, the

court must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.[17]

> A state-court decision is contrary to clearly established federal law if: (a)
> "the state court applies a rule that contradicts the governing law set forth
> in Supreme Court cases"; or (b) "the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405). "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.' "
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly
> established federal law when it identifies the correct governing legal rule
> from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at
> 407–08.  Additionally, we have recognized that an unreasonable
> application may occur if the state court either unreasonably extends, or
> unreasonably refuses to extend, a legal principle from Supreme Court
> precedent to a new context where it should apply.[18]

The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision

is 'objectively unreasonable' when most reasonable jurists exercising their independent

---

[16] *See id.* at 1018.

[17] *See Williams*, 529 U.S. at 404–05.

[18] *House*, 527 F.3d at 1018.

judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.[19]

In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."[20] Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[21]

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[22]

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[23]

> Claims asserting factual errors are reviewed pursuant to 28 U.S.C.

---

[19] *Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).

[20] *Id.*

[21] *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011).

[22] *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

[23] *Richter*, 131 S.Ct. 786–87.

§ 2254(d)(2).[24]   Section 2254(d)(2) allows the court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the court presumes that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"[25]

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the court must review the claim de novo and the deferential standards of § 2254(d) do not apply.[26]

B.      *Pro Se* Litigant

Applicant is proceeding pro se. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[27] However, the Applicant's pro se status does not entitle him to an application of different rules.[28]

---

[24]*See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

[25]*Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

[26]*See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

[27]*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

[28]*See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

8

IV.    <u>Legal Analysis</u>

A.    Claim One

For his first claim, Applicant asserts that the state trial court violated his constitutional right to a speedy trial due to a delay from November 4, 2002 to January 6, 2003.[29]  Applicant further asserts that his court-appointed counsel waived Applicant's right to speedy trial "over his objection."[30]

The Sixth Amendment to the United States Constitution affords criminal defendants the right to a speedy trial.[31]  In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court directed the lower federal courts to consider the following four factors in determining whether pretrial delays have violated a defendant's constitutional right to speedy trial: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and, (4) prejudice to the defendant.  The four factors must be considered together along with other relevant circumstances.[32]

For purposes of the constitutional analysis, the speedy trial time period commences when the defendant is first arrested or charged with committing a federal offense and ends when his jury trial begins.[33]  The length of delay is a threshold factor.[34]

---

[29]Doc. No. 1, at 5; Doc. No. 7-1, at 9.  Although Applicant's trial did not commence until April 28, 2003, Applicant does not challenge the delay in his case between January 6, 2003 and the trial date.

[30]*Id.*

[31]U.S. Const. amend. VI.

[32]*United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009).

[33]*See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (stating that the speedy trial right attaches at the earlier of either arrest or indictment.).

[34]*Id.*; *see also Barker*, 407 U.S. at 530.

If the delay is not presumptively prejudicial, the court need not inquire into the remaining

*Barker* factors.[35]

The Colorado Court of Appeals did not apply the *Barker* test to Applicant's claim

on direct appeal of his conviction.  Instead, the state appellate court analyzed

Applicant's claim under the state speedy trial statute, § 18-1-405, C.R.S. (2010), which

the appellate court characterized as "implement[ing] the constitutional right to a speedy

trial.[36]  The Colorado Court of Appeals concluded that Applicant had waived his speedy

trial rights based on the following proceedings in the trial court:

> [O]n August 15, 2002, defense counsel requested a continuance of the November 4 trial date and told the court that defendant had signed a speedy trial waiver.  However, defendant stated that he was unwilling to waive his speedy trial rights.  The court denied the motion.
>
> Defense counsel then moved for a continuance based on effective assistance of counsel.  Counsel attached a waiver signed by defendant and dated August 8, 2002.  The court granted the continuance to ensure that defendant had effective assistance of counsel.
>
> Later, new defense counsel moved to dismiss the charges based on a violation of defendant's speedy trial rights.  After a hearing, the court ruled, relying on *People v. Jefferson, supra*, that defendant had waived his rights to speedy trial and that the waiver could not be revoked.  We must accept the court's factual finding that defendant waived his right to speedy trial where, as here, the record supports it.  *See People v. Jefferson, supra.*[37]

Under federal constitutional law, a defendant's purported waiver of his speedy

trial right is not dispositive, but is instead considered under the *Barker* balancing test in

---

[35]*Id.*

[36]Doc. No. 7-6, at 2.

[37]Doc. No. 7-6, at 3-4.

determining whether a constitutional violation has occurred.[38]  Because the state appellate court did not fully analyze Applicant's claim under the federal Constitution, this Court reviews the claim *de novo*.[39]

Under the first *Barker* factor, I find that the more than thirteenth-month delay between Applicant's arrest on November 13, 2001[40] and the January 6, 2003 trial setting was presumptively prejudicial.  "Delays approaching one year generally satisfy the requirement of presumptive prejudice."  *Batie*, 433 F.3d at 1290 (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992)); *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004).

The second *Barker* factor requires me to consider the reason for the delay.  The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay.[41] Continuances requested by the defendant are not attributed to the government.[42] On June 3, 2002, the trial court appointed alternate defense counsel (ADC) for Applicant, after the public defender was removed from the case at Applicant's request due to an asserted conflict-of-interest stemming from his dissatisfaction with counsel's representation.[43]  During a June 25, 2002 hearing, Applicant agreed in open court to a continuance of the August 2002 trial date to

---

[38] *See Barker*, 407 U.S. at 528-29, 531-32.

[39] *See Gipson*, 376 F.3d at 1196.

[40] State Court R. File, at 10-11 of 557.

[41] *Batie*, 433 F.3d at 1291.

[42] *See United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir.1990).

[43] *See* State Court R. File, at 134 of 558; *see also* 6/4/02 Hrg. Tr.

November 4, 2002, so that his newly-appointed ADC could prepare adequately for trial.[44]  On September 5, 2002, ADC requested a further continuance on the grounds that he needed additional time to review voluminous discovery, to interview the 200 persons identified as potential witnesses, and to review and consider recently discovered evidence which may contradict the defense theory of the case.[45]  ADC advised the trial court at the September 5, 2002 hearing that if he proceeded to trial on November 4, 2002, it would be "legal suicide."[46]  Applicant objected to the requested continuance.[47]  The trial court found, over Applicant's objection, that a continuance was warranted to preserve Applicant's Sixth Amendment right to effective assistance of counsel at trial.[48] The trial court thus continued the trial to January 6, 2003.

I find that the second favor weighs slightly against the Applicant.  He initially agreed to a continuance of the trial from August 2002 until November 4, 2002, so that his ADC could prepare an adequate defense.  Although Applicant objected to a continuance of the trial date from November 4, 2002 to January 6, 2003, the same reasons supported both the first and second continuances, and the trial court so found. The trial court's factual findings are presumed correct under 28 U.S.C. § 2254(e)(1) and are supported by the state court record.  Applicant has not rebutted those findings with any clear and convincing evidence to the contrary.

---

[44]State Court R. 6/25/02 Hrg. Tr.

[45]State Court R. 9/5/02 Hrg. Tr. at 4-7.

[46]*Id.* at 4.

[47]*Id.* at 15.

[48]*Id.* at 16.

Under the third *Barker* factor, Applicant asserted his speedy trial right at the September 5, 2002 hearing (and in a motion to dismiss filed September 3, 2002)[49] after he agreed in June 2002 to a continuance of the trial date from August 2002 to November 4, 2002, so that his counsel could prepare effectively for trial.  Applicant's later objection to counsel's second request for a short continuance on the same grounds contradicts his earlier approval.  As such, I find that the third factor weighs slightly against the Applicant.[50]

Finally, there is no evidence to indicate that Applicant was prejudiced by the delay.  Prejudice is presumed where there was extreme delay, but where, as here, the delay is not extreme, the defendant must make a particularized showing of prejudice.[51] To determine prejudice, I consider the interests the speedy trial right was designed to protect: "(1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense."[52] The last of these interests is the most critical "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[53]  The petitioner bears the burden of showing prejudice and the mere

---

[49]State Court R. File, at 147-48 of 558.

[50]*See Tranakos*, 911 F.2d at 1429 ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."); *see also United States v. Dirden,* 38 F.3d 1131, 1138 (10th Cir.1994) (finding that the third factor weighed against a defendant who moved for a continuance and acquiesced when the trial date was vacated twice).

[51]*See Toombs,* 574 at 1275.

[52]*Id.*

[53]*Barker*, 407 U.S. at 532.

"possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated."[54]

Applicant asserted in his opening brief on direct appeal to the Colorado Court of Appeals that the delay "affected the children's testimony," the credibility of which was of critical importance.[55] He further argued that the delay deprived him of an important witness, Christine Davidson, who became unavailable, but who would have provided exculpatory testimony.[56]

The defendant may be prejudiced at trial if defense witnesses are unable to recall events accurately because of a delay in the trial date.[57]  However, "[t]he failure of a prosecution witness's memory does not support a claim that the Sixth Amendment was violated."[58]  The child witnesses testified for the prosecution.  Thus, any impairment to their memory as a result of the delayed trial date did not prejudice the defense.

To demonstrate that the unavailability of a witness impaired the defense, a habeas petitioner must "state[ ] with particularity what exculpatory testimony would have been offered."[59] Applicant has never articulated the substance of Ms. Davidson's purported exculpatory testimony to the state or federal courts.  In addition, Applicant has failed to allege facts to show that the witness was unavailable because of the delayed

---

[54]*United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

[55]Doc. No. 7-1, at 12.

[56]*Id.*

[57]*See Barker*, 407 U.S. at 532.

[58]*Tranakos*, 911 F.2d at 1429.

[59]*Id.* (internal quotations, citations, and alterations omitted).

trial date.[60]

Moreover, Applicant's allegations that the delay enabled the prosecution additional time to gather evidence against him are without merit.  "[T]he fact that the government strengthened its case during the delay [does not] count[ ] as a form of prejudice."[61] And, finally, the state court record reflects that in November 2002, Applicant requested the appointment of conflict-free counsel based upon irreconcilable differences between Applicant and ADC over defense strategy and communication issues.[62] Applicant's motion required the trial court to appoint a second ADC, which necessitated a further continuance of the trial date beyond January 2003.[63] As the trial court recognized, Applicant's continued dissatisfaction with appointed counsel was at least partially responsible for the multiple delays in his trial date. [64] Accordingly, I find that the fourth *Barker* factor weighs against Applicant.[65]

On balance, I find and conclude that Applicant has failed to demonstrate a violation of his Sixth Amendment right to speedy trial.  Claim one therefore will be dismissed.

B.     Claim Three

In his third claim, Applicant asserts that the trial court's admission of a child

---

[60]*Jackson*, 390 F.3d at 1265 (citation omitted).

[61]*United States v. Seltzer,* 595 F.3d 1170, 1180 n.4 (10th Cir. 2010).

[62]State Court R. 11/27/02 Hr. Tr. at 12-14.

[63]*Id.* at 33-34; 1/22/03 Hrg. Tr., at 3-4.

[64]*Id.*, 11/27/02 Hrg. Tr. at 8-9; 12; 18-19, 25-27.

[65]*See Jackson*, 390 F.3d at 1267 ("while prejudice is not essential to a violation," this court is "reluctan[t] to find a speedy trial deprivation where there is no prejudice."

15

witness's videotaped statements to the police at trial violated his Sixth Amendment confrontation rights.[66]

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[67] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that a trial court's admission of testimonial hearsay against a defendant at trial violates the defendant's confrontation rights unless the witness is unavailable and there was a prior opportunity for cross-examination.  A witness's statements to the police are testimonial when the circumstances of a police interrogation "objectively indicate that there is no . . . ongoing emergency, and that the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution."[68]

A petitioner is not entitled to federal habeas relief based on a constitutional violation at his trial unless the constitutional error had a "substantial and injurious effect or influence" on the jury's verdict.[69]  Put differently, the constitutional violation must "have resulted in 'actual prejudice.'"[70]

The Colorado Court of Appeals recognized the applicability of *Crawford* to Applicant's claim,[71] but on plain error review, concluded that Applicant had failed to

---

[66]Doc. No. 1, at 6.

[67]U.S. Const. amend. VI.

[68]*Davis v. Washington*, 547 U.S. 813, 822 (2006).  *Davis* was decided on June 19, 2006, while Applicant's direct appeal was pending.

[69]*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted).

[70]*Id.*

[71]Doc. No. 7-6, at 13.

show that he was prejudiced at trial as a result of the asserted constitutional error.  The state appellate court reasoned:

> [W]e find that the jury had substantial other evidence to find defendant guilty of reckless manslaughter, apart from BJ's videotaped statements.  The prosecution presented two other eyewitnesses to the shooting who testified that defendant brought a gun into the apartment, a struggle ensued, and the gun went off, killing the victim.  This testimony provided the jury with ample evidence to find defendant guilty of reckless manslaughter.  Thus, the error did not cast serious doubt on the reliability of the judgment of conviction.
>
> Accordingly, we conclude that admission of BJ's videotaped police interview did not constitute plain error.[72]

The state appellate court's factual determinations are presumed correct and are supported by the state court record.[73] Applicant does not point to any clear and convincing evidence to the contrary.  Because there was significant evidence of Applicant's guilt apart from the hearsay statements of the child witness, Applicant has not shown that the alleged Sixth Amendment violation had a "substantial and injurious effect or influence" on the jury's verdict.[74]  I find that the Colorado Court of Appeals' determination that Applicant was not prejudiced by the admission of the hearsay statements was not contrary to, or an unreasonable application of federal law. Applicant thus cannot prevail on his third claim for relief.

C.    Claim Five

For his fifth claim, Applicant asserts that the arrest warrant affidavit failed to establish probable cause for his arrest, and, therefore, the trial court should have

---

[72]*Id.* at 14.

[73]*See* State Court R. 5/1/03 Trial Tr. at 240, 251-53; 5/2/03 Trial Tr. at 535-36.

[74]*Brecht*, 507 U.S. at 637.

granted his motion to suppress his statements to the arresting officers.[75]

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.[76]  The Supreme Court has limited federal habeas review for alleged Fourth Amendment violations based on the Court's determination that any additional contribution gained from consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the associated costs.[77]  The Court held in *Stone* that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."[78]

The Supreme Court has not defined precisely the phrase "opportunity for full and fair litigation."[79] The Court of Appeals for the Tenth Circuit has determined that the phrase:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim.  It also includes the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].  Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.[80]

"Thus, a federal court is not precluded from considering Fourth Amendment claims in

---

[75]Doc. No. 1, at 6.

[76]*See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).

[77]*Stone*, 428 U.S. at 493-94.

[78]*Id.* at 494.

[79]*See Gamble v. State of Oklahoma*, 583 F.2d 1161, 1164 (10th Cir. 1978).

[80]*Id.* at 1165.

habeas corpus proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards."[81]

In this case, Applicant filed a motion to suppress his statements to the arresting police officers and the state trial court held a hearing.[82]   The trial court ruled as follows:

> I've reviewed the probable cause affidavit.  Under the case of *Franks v. Delaware*, 438 U.S.154 [1978],[83] [Applicant] has the burden of coming forward with a substantial preliminary showing that there was a false statement knowingly or intentionally made or a statement that was made with a reckless disregard for the truth in the affidavit.  There has been no such showing.  The only argument is that there was insufficient information based on the handwritten portion of the affidavit by Detective Graham saying that he learned from Detective Meyer that Ms. Jackson mentioned Mr. Robinson as a second suspect.  But also contained within the affidavit is the fact that [JJ] identified [Applicant] in the photo lineup.  So I'm going to deny [Applicant's] motion to suppress the arrest based on the probable cause affidavit.  Probable cause was present.[84]

On direct appeal of Applicant's conviction, the Colorado Court of Appeals affirmed the trial court's ruling.[85]   The state appellate court reviewed the averments in the affidavit and discerned "a substantial basis to support issuance of an arrest

---

[81] *Id.*

[82] State Court R. File, at 67 -79 of 558; State Court R. 1/30/03 Hr. Tr. at 51-54.

[83] In *Franks*, the Supreme Court  held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56.

[84] State Court R. 1/30/03 Hr. Tr. at 51-54.

[85] Doc. No. 7-6, at 6-7.

warrant."[86]

I find that the state trial and appellate court proceedings sufficed to provide Applicant with an opportunity for full and fair litigation of his claim.[87] The state courts relied on United States Supreme Court Fourth Amendment precedent in resolving Petitioner's claim, both directly and through state case law applying constitutional standards.[88]

Applicant does not assert, nor is it apparent from the state court record, that the state courts failed to recognize or wilfully ignored controlling legal standards. Instead, Applicant merely disagrees with the result of the state court proceeding. I therefore find and conclude that Applicant is barred from federal habeas review of his Fourth Amendment claim, and claim five must therefore be dismissed.

D.     Claim Seven

In claim seven, Applicant contends that the trial court imposed a sentence in the aggravated range, based on facts not found by the jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).[89]

---

[86]*Id.*

[87]*See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir.1999) (holding that petitioner was not entitled to habeas review of Fourth Amendment claim where petitioner's trial counsel informed the trial court of the factual basis for a Fourth Amendment claim, appellate counsel presented the issue to the state appellate court on direct appeal, and the state courts "thoughtfully considered the facts underlying petitioner's Fourth Amendment claim" but rejected it on the merits by applying appropriate Supreme Court precedents).

[88]*See Banks v. People*, 696 P.2d 293, 296 (Colo. 1985) (citing Supreme Court Fourth Amendment case law); *People v. Abeyta*, 795 P.2d 1324, 1327 (Colo. 1990) (same).

[89]Doc. No. 1, at 7; Doc. No. 7-1, at 4.

Under *Apprendi*, any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.[90]  *Apprendi* applies when the sentence is enhanced beyond the prescribed "statutory maximum," which the Supreme Court has defined as the maximum sentence a judge may impose based on the verdict alone, "without any additional findings."[91]  Prior convictions are exempt from the rule of *Apprendi*.[92]  An offender's status as a parolee is a fact linked to the fact of a prior conviction and is therefore included within the prior conviction exception to the *Apprendi* rule.[93]

Under Colorado law, the presumptive sentence range for the crime of reckless manslaughter, a class four felony, is two to six years.[94]  Pursuant to 18-1.3-401(6), C.R.S., the court may impose a sentence that is not greater than twice the maximum authorized by the presumptive range if the Court concludes that aggravating circumstances are present, based on evidence in the record and in the presentence report.

The trial court sentenced Applicant to twelve years of imprisonment based on

---

[90] *Apprendi*, 530 U.S. at 490.

[91] *Blakely*, 542 U.S. at 304.

[92] *See Apprendi*, 530 U.S. at 476, 490; *see also Hunter v. Werholtz,* 505 F.3d 1080, 1082 (10th Cir. 2007) (holding that *Apprendi* does not require a state to prove beyond a reasonable doubt facts related to prior convictions).

[93] *See United States v. Corchado*, 427 F.3d 815, 820 (10th Cir. 2005) ("[T]he 'prior conviction' exception extends to 'subsidiary findings' such as whether a defendant was under court supervision when he or she committed a subsequent crime.").

[94] *See* § 18-3-104, C.R.S.; § 18-1.3-401(1)(a)(V)(A), C.R.S.

Applicant's prior felony and misdemeanor convictions, and his parole status.[95]  The trial

court also considered the following factors in sentencing:  Applicant brought a gun to a

discussion about missing speakers; he did not leave the scene once an argument

ensued between him and the victim, but instead chose to follow the victim to his

apartment and broke down the door into the room where children were present; a child

was underneath Mr. Jackson when Applicant fired the gun that killed the victim; and, the

impact to the victim's family.[96]

The Colorado Court of Appeals rejected Applicant's claim on direct appeal on the

following grounds:

> Section § 18-1.3-401(6), which permits the sentencing court to
> impose a sentence outside the presumptive range upon finding the
> existence of extraordinary aggravating or mitigating circumstances, is
> constitutionally applied where the sentencing court relies on *Blakely*-
> compliant or *Blakely*-exempt facts to support a sentence above the
> presumptive range.  *DeHerrera v. People*, 122 P.3d 992 (Colo. 2005).
> Sentencing within this aggravated range is constitutionally and statutorily
> proper even if the judge also considered additional factors that were not
> *Blakely*-compliant or *Blakely*-exempt.  *Lopez v. People*, 113 P.3d 713
> (Colo. 2005).
>
> Prior convictions facts are considered *Blakely*-exempt.  *Lopez v.
> People, supra.*  The prosecution must prove the existence of prior
> conviction facts only by a preponderance of the evidence because the
> sentence enhancement provision does not have a statutory burden of
> proof.  *See People v. Whitley*, 998 P.2d 31 (Colo. App. 1999).
>
> At the sentencing hearing, the prosecution presented certified
> copies of records from the California Department of Corrections detailing
> prior convictions of a person with defendant's name and including a
> picture of the person.  Defendant made a foundational argument below
> and argued that the documents were not sufficient to prove that he was

---

[95]State Court R. 07/08/02 Sentencing Hrg. at 30, 44.

[96]*Id.* at 44.

the person described in those documents.

> On appeal, [Applicant] argues that there were no *Blakely*-compliant or *Blakely*-exempt aggravating factors to justify the court's imposition of an aggravated sentence.  However, [Applicant] makes no specific arguments as to how the prosecution failed to meet its burden, and instead, makes only a conclusory statement that the prosecution did not prove [Applicant's] past convictions.  We need not consider arguments where counsel has failed to inform the court of the specific errors relied upon and the grounds, facts, and authorities therefore.  *See People v. Diefenderfer, supra.*[97]

The state appellate court went on to observe that the documentary evidence of

Applicant's prior convictions was admissible under the Colorado Rules of Evidence and

that Applicant did not object when the trial court admitted the documents.[98]  The

Colorado Court of Appeals therefore determined that the trial court did not err by

sentencing defendant in the aggravated range.[99]

 The state appellate court's factual determination that Applicant had prior felony

convictions is presumed correct in this federal habeas proceeding, and Applicant has

not pointed to any clear and convincing evidence to demonstrate otherwise.

Furthermore, the state appellate court's reliance on *Lopez* to support Applicant's

aggravated sentence was not an unreasonable application of federal law.  In *Lopez*, the

Colorado Supreme Court held that a trial court's reliance on a prior conviction is

sufficient to support an aggravated sentence "even if the trial court also relied on other

constitutionally impermissible factors."[100]  The *Lopez* decision is consistent with the

---

[97]Doc. No. 7-6, at 21-23.

[98]*Id.* at 23.

[99]*Id.*

[100]*Lopez*, 113 P.3d at 731.

rules of *Apprendi* and *Blakely*.[101] Applicant does not cite to any clearly established federal law that prohibits the consideration of additional factors that are not either *Blakely*-exempt or *Blakely*-compliant once a defendant is exposed to an aggravated sentence based on his prior convictions.[102]  Accordingly, I find that the state appellate court's resolution of Applicant's claim was neither contrary to nor an unreasonable application of federal law.  Claim seven thus will be dismissed.

E.      Claims Nine, Ten, Eleven and Twelve

In claims nine, ten, and eleven, Applicant asserts that trial counsel was constitutionally ineffective in failing to: investigate and present the alibi defense (claim nine); file a motion to suppress prejudicial evidence (claim ten); and, in failing to convey a possible plea offer to Applicant (claim eleven).[103]  In claim twelve, Applicant contends that trial counsel labored under a conflict of interest, in violation of his Sixth Amendment rights.

To prevail on his claims of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."[104] Judicial

---

[101] *See United States v. Romero*, No. 10-1362, 432 F. App'x 790, 793-94 (10th Cir. Aug. 15, 2011) ("[W]hen a judge exercises his or her discretion to consider an aggravated sentence based on the fact of a prior conviction, '[t]he sentencing judge then has full discretion to sentence within this widened range according to traditional sentencing considerations,'" quoting *Lopez*, 113 P.3d at 716).

[102] *See Horrell v. Zavaras*, No. 10-cv-02834-MSK, 2011 WL 6216962, at *10 (D. Colo. Dec. 14, 2011) (observing that petitioner failed to point to any United States Supreme Court decision that contravened *Lopez*).

[103] Doc. No. 12, at 2-3.

[104] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

scrutiny of counsel's performance is highly deferential.[105]  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."[106]  Under the AEDPA standard of review,  "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[107]

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.[108]  The likelihood of a different result must be substantial, not just conceivable.[109]  The court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.[110]

### 1.  *failure to investigate and present the alibi defense*

Applicant asserts in his ninth claim that trial counsel failed to investigate and preserve an alibi defense.[111]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case,

---

[105] *Id.* at 689.

[106] *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).

[107] *Harrington*, 131 S.Ct. at 788.

[108] *Strickland*, 466 U.S. at 693.

[109] *Id.*

[110] *Id.* at 697.

[111] Doc. No. 12, at 2.

a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment."[112]

In September 2002, Applicant's then-appointed ADC counsel requested a continuance of the trial date, based in part, on counsel's need to further develop, or rule out, a potential alibi defense which counsel was then investigating.[113] Counsel advised the court that recent evidence indicated that the defense may not be viable.[114] The trial court subsequently held a conflict hearing on November 27, 2002 because Applicant asserted that he was experiencing irreconcilable differences with his counsel over the alibi defense.[115]  Counsel told that trial court that he had determined, based on recent evidence, that it was not in Applicant's best interest to assert an alibi defense, and, therefore, counsel was investigating other possible defense theories.[116]  However, Applicant remained adamant about defending on the basis of alibi.[117]  The trial court allowed lead counsel to withdraw on the basis of an ethical conflict over the defense strategy, and new ADC was appointed to represent Applicant.[118]

The state appellate court rejected Applicant's claim in the state post-conviction

---

[112]*Strickland*, 466 U.S. at 691.

[113]State Court R. 09/05/02 Hrg. Tr. at 3, 5-6.

[114]*Id.* at 5-6.  Counsel told the court: "[O]bviously one would prefer to asset a defendant's preferred alibi or preferred defense.  However, one cannot blindly do that when other evidence is coming in which screams that you go with this defense at your extreme peril.  Because with an alibi defense, you're essentially giving up all other defenses." *Id.* at 8-9.

[115]*See generally* State Court R. 11/27/02 Hrg. Tr.

[116]*Id.* at 13-16.

[117]*Id.*

[118]*Id.* at 32.

proceeding because he failed to include any facts such as the identity of the alibi witness or how proof of the alleged alibi would have exonerated him."[119]  The Colorado Court of Appeals further found that Applicant failed to "allege[ ] any facts concerning what an investigation would have shown and how the failure to investigate resulted in prejudice."[120]

The state appellate court's determination that Applicant did not provide any factual support for his claim that counsel failed to investigate an alibi defense is supported by the state court record, which shows that ADC did investigate the defense between June and November 2002, but ruled it out based on contradictory government evidence.  New ADC appointed for Applicant after the November 27, 2002 hearing presumably reviewed all of the same information relied on by former counsel in deciding not to pursue the defense.  Applicant has not overcome the presumption that counsel's decision not to pursue an alibi defense was sound trial strategy. And, Applicant has failed to explain how the alleged failure to investigate prejudiced him at trial, nor has he set forth specific facts or evidence to show that presentation of the alibi defense at trial would have resulted in an acquittal.  Conclusory allegations of prejudice are inadequate to support an ineffective assistance of counsel claim.[121]  Accordingly, I find that the Colorado Court of Appeals' determination of Applicant's claim was consistent with the

---

[119]*People v. Robinson*, No. 07CA2360  (Colo. App. Aug. 19, 2010) (unpublished); Doc. No. 7-12, at 3.

[120]*Id.* at 4.

[121]*See Cummings v. Sirmons*, 506 F.3d 1211, 1233–34 (10th Cir. 2007) (conclusory allegations are not sufficient to satisfy *Strickland*); *Strickland*, 466 U.S. at 687-88 (petitioner must make a showing of deficient performance and prejudice).

evidence presented in the state court proceeding and was a reasonable application of *Strickland*.  Applicant's ninth claim will be dismissed.

## 2. *Failure to file a motion to suppress prejudicial evidence*

For his tenth claim, Applicant asserts that trial counsel was ineffective in failing to file a motion to suppress prejudicial evidence.[122]

Before trial, Applicant's counsel filed motions to suppress Applicant's statements to the police, another witness's statements, and any out-of-court or in-court identification of Applicant.[123]

The Colorado Court of Appeals rejected Applicant's claim in the state post-conviction proceeding on the basis that the claim was "conclusory and lacks any supporting facts because [Applicant] does not identify what evidence should have been suppressed."[124]

I find that the state appellate court's determination of Applicant's claim comported with *Strickland*.  Applicant has consistently failed to specify what prejudicial evidence counsel should have moved to suppress.  Because Applicant has not articulated the basis for the allegations of ineffective assistance in his tenth claim, the claim will be dismissed.[125]

---

[122]Doc. No. 12, at 2.

[123]State Court R. File, at 67-69, 197-198, 213-14, and 216-17 of 558.

[124]Doc. No. 7-12, at 3.

[125]*See Cummings*, 506 F.3d at 1233-34; *Strickland*, 466 U.S. at 687-88.

3.  *Failure to convey a plea offer*

For his eleventh claim, Applicant asserts that counsel was ineffective in failing to inform him about "a possible plea offer" from the government.[126]  He does not identify the terms of the plea offer or allege specific facts to show that a plea offer was in fact made.

Counsel's failure to convey a favorable plea agreement to the defendant can constitute ineffective assistance where the defendant establishes that but for counsel's deficient performance he would have accepted the plea offer and pleaded guilty.[127]

The state appellate court resolved this claim against Applicant as follows:

> Although counsel's failure to convey an actual plea offer constitutes deficient performance, . . ., to obtain relief for ineffective assistance a defendant must still allege facts that if proven show prejudice.  Here, because [Applicant] motion does not specify the terms of the alleged plea offer, as compared to his conviction and sentence, he has not alleged facts sufficient to show prejudice.  Nor has he alleged that if communicated, the purported offer would have been accepted. [State case law citation omitted].[128]

The Court finds that the state appellate court's disposition of Applicant's claim was a reasonable application of federal law.  Applicant has not alleged any facts to show that a plea offer was made and that if counsel had informed him about the offer he

---

[126]Doc. No. 12, at 2-3.

[127]*See Williams v. Jones*, 571 F.3d 1086, 1090 nn. 3 & 4 (10th Cir. 2009); *see also United States v. Morris,* No. 03–3360, 2004 WL 1598792, at *2 (10th Cir. July 19, 2004) ("[I]n the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the prosecution, . . .failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments.") (quoting *United States v. Golden*, 102 F.3d 936, 943 (7th Cir.1996)); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process").

[128]Doc. No. 7-12, at 3-4.

would have pleaded guilty instead of going to trial.  Further, he fails to demonstrate that the plea offer would have resulted in a lesser sentence than the one imposed by the jury.[129]  Applicant therefore cannot prevail on his eleventh claim.

### 4.  *trial counsel labored under a conflict of interest*

For his twelfth and final claim, Applicant asserts that counsel was ineffective because counsel labored under a conflict-of-interest.[130]

The Colorado Court of Appeals rejected this claim in the state post-conviction proceeding because Applicant failed to provide any details about which of his counsel had a conflict of interest, and he failed to articulate the basis of the conflict.[131]

The state appellate court's resolution of this claim was not inconsistent with clearly established federal law.[132]  I find that Applicant's conclusory assertion in claim twelve fails to satisfy the two-part *Strickland* inquiry and must be dismissed.

### V.   Order

Accordingly, it is

ORDERED that the Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1; May 10, 2011) is **DENIED WITH PREJUDICE**. It is

---

[129] *See United States v. McGehee*, No. 08-7085, 307 F. App'x 145, 148 (10th Cir. Jan. 9, 2009) (unpublished) (to establish prejudice in plea proceedings, petitioner must "allege that he would have taken a plea offer [and] that such an offer would have reduced the sentence he received as a result of the jury conviction").

[130] Doc. No. 12, at 3.

[131] Doc. No. 7-12, at 6.

[132] *See Cummings*, 506 F.3d at 1233–34; *Strickland*, 466 U.S. at 687-88.

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right.[133]

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Plaintiff files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is **DENIED**.

Dated:  April 17, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge

---

[133]28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).